IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **TY'KARA RICHARD** | § | **CIVIL ACTION NO. 2:21-cv-03483** |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **ABNAR, INC. d/b/a MCDONALD'S** | § | |
| *Defendant* | § | **JURY DEMANDED HEREIN** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES**, through undersigned counsel, Plaintiff, **TY'KARA RICHARD**, who files her Original Complaint against Defendant, **ABNAR, INC. d/b/a MCDONALD'S**. She hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 as it appears as 42 U.S.C. § 2000e *et seq.*

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States; and

   b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government.

3. Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) on or about September 25, 2020 (Charge No. 461-2020-02150). Plaintiff received her Notice

1

of Suit Rights on July 8, 2021. *See* Exhibit A. Plaintiff is afforded 90 days from her receipt of such Notice to commence suit, and the date of this filing is within the statutory period.

4. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically Calcasieu Parish, making the Lake Charles Division the most appropriate Division for this suit.

---

**PARTIES**

---

5. Plaintiff is a citizen of the United States and resides in the city of Lake Charles, State of Louisiana.

6. Plaintiff is female and, as such, is a member of a protected class.

7. At all times relevant to this suit, Plaintiff worked as a Crew Trainer for **ABNAR, INC. d/b/a MCDONALD'S** at its location in Lake Charles, Louisiana. Furthermore, at all relevant times, Plaintiff earned $9.75 per hour.

8. Defendant, **ABNAR, INC. d/b/a MCDONALD'S** ("ABNAR") is a municipal corporation licensed to conduct and is conducting business in the state of Louisiana. The acts complained of in this Complaint occurred in Calcasieu Parish, State of Louisiana, where **ABNAR** performs a significant amount of business, including the operation of the McDonald's restaurant subject of this Complaint. At all times relevant to Plaintiff's employment, **ABNAR** was Plaintiff's acting employer.

*{Remainder of Page Intentionally Left Blank}*

## FACTUAL ALLEGATIONS

9. Plaintiff was the victim of sexual instances of sexual abuse throughout her early childhood. As a direct consequence of these repeated instances, Plaintiff was diagnosed with Post Traumatic Stress Disorder ("PTSD"). Plaintiff has also been diagnosed with Anxiety and Depression, for which she has been prescribed medication.

10. Plaintiff began her employment with Defendant on or about October 25, 2019. Originally, Plaintiff worked at Defendant's restaurant located on Nelson Road, which is located in Lake Charles, Louisiana. Plaintiff did not experience any issues during her employment at the Nelson Road location.

11. In approximately May 2020, Plaintiff transferred to Defendant's Broad Street location as a Crew Trainer, where she earned $9.75 per hour.

12. For the entire duration of Plaintiff's employment at Defendant's Broad Street location, Plaintiff was consistently approached by a male co-worker, Jessie James (hereinafter "James"), who repeatedly called Plaintiff "baby," consistently described things he would "do to her (Plaintiff)" and for her (Plaintiff) "if he was (her) man." In addition, James physically touched Plaintiff on several occasions. Plaintiff repeatedly told James to cease the sexually inappropriate activity; however, he steadfastly refused to do so.

13. In June 2020, while Plaintiff and James were working in the restaurant lobby, James came up behind Plaintiff and deliberately grabbed her buttocks.

14. Almost immediately after James grabbed Plaintiff's buttocks, Plaintiff verbally complained/reported the incident to Shift Lead, LaShonda LNU. At the time of the conversation, LaShonda LNU was bagging food.

15. After no corrective action was taken, Plaintiff reported the incident to several of Defendant's managers, including Production Manager, Quinton Holleman (hereinafter "Holleman"), and Assistant Manager, Cory Mackey (hereinafter "Mackey"); however, no action was taken against James.

16. Plaintiff first reported James' behavior to Holleman approximately two (2) days after James grabbed Plaintiff's buttocks. At that time, Holleman relayed that he would speak to his upline about the matter.

17. Plaintiff subsequently missed approximately one (1) week of work due an emergency room lab workup revealing that she was positive for COVID-19.

18. A couple of days after Plaintiff returned to work after being released from quarantine, Mackey pulled Plaintiff aside in the kitchen and asked her "what's going on?" In response, Plaintiff told Mackey that her health had been declining and that James had grabbed her buttocks. During the conversation, Mackey stood in the kitchen with his hands in his pocket, shaking his head. At the end of the conversation, Mackey stated "Ima get with Jessie."

19. On July 8, 2020, Plaintiff was scheduled to work from 4:00PM to 12:00AM. Plaintiff was working a busy shift, and rather than receiving assistance from her managers, she witnessed Mackey and Kitchen Manager, Jonah LNU (hereinafter "Jonah") sitting in the back office neglecting their duties and staff. Plaintiff became overwhelmed at the sight, as she knew that Mackey and the rest of management were neglecting her complaints against James, just as they were now neglecting the staff during a busy shift.

20. After becoming overwhelmed, Plaintiff left her shift at 6:10PM. Plaintiff called Holleman and advised him of the same.

21. On July 10, 2020, Plaintiff contacted Holleman for a second time and explained that the reason she left early during her shift on July 8, 2020 was due to the unremediated harassive behavior exhibited by James.

22. On July 11, 2020, Plaintiff contacted Manager, Joshua Joseph ("Joseph"), at which time she advised him that she was not comfortable working with James and, consequently, wanted to transfer away from the Broad Street restaurant.

23. On or about July 13, 2020, and despite the fact that Plaintiff had corresponded with both Holleman and Joseph about her concerns regarding James, Defendant nevertheless terminated Plaintiff from Defendant's system on July 13, 2020. According to the system, Defendant indicted that Plaintiff "quit without notice."

24. Prior to July 13, 2020, Plaintiff had readily notified Defendant's management that the reason she did not return to work was solely due to James' unremediated, sexually harassive behavior toward her.

25. On July 14, 2020, Joseph contacted Plaintiff via telephone, and Plaintiff verbally articulated her concerns with James throughout the duration of the 4:32 call. At that time, Joseph asked Plaintiff to meet with him in-person on July 18, 2020.

26. On July 18, 2020, Plaintiff participated in a meeting with James and Mackey, during which Mackey denied her previous complaints to him regarding James. Nevertheless, during the meeting, Joseph informed Plaintiff that she had been terminated from the system effective July 13, 2020 and that, if she wanted her job back, she would have to formally re-apply and complete the onboarding process anew. At no time did Joseph tell Plaintiff that she was not eligible for re-hire.

27. Following the meeting, Plaintiff went and attempted to speak with a Human Resources representative at Defendant's Common Street location. When Plaintiff arrived, a representative told her that she would have to wait. After waiting for approximately ten (10) minutes, Plaintiff told the representative "forget it, I'll just see about getting an attorney." In response, the representative asked Plaintiff what had occurred. Plaintiff subsequently left the Common Street location.

28. Approximately fifteen (15) minutes later, Myriah LNU, Joseph's immediate report, contacted Plaintiff to discuss the situation.

29. Plaintiff ultimately filed a police report against James on July 16, 2020. Subsequent to this report, and upon information and relief, Defendant ultimately terminated James from Employment.

30. Plaintiff filed a Charge of Discrimination with the EEOC on September 20, 2020, alleging that she had been subjected to discrimination on the basis of sex and to retaliation, both in violation of Title VII of the Civil Rights Act of 1964. Plaintiff received her Notice of Suit Rights on July 8, 2021.

31. On September 27, 2021, Leah LNU, a manager from Defendant's Nelson Road facility currently tasked with hiring duties, texted Plaintiff and said "Hey girl. Would you be willing to come back to mcds? Ima try and get you back." In response, Plaintiff indicated that she would come back only if she could work at the Nelson location. Thereafter, and per Leah LNU's request, Plaintiff indicated what hours she could work.

32. Per Leah LNU's request, Plaintiff completed and submitted the requisite La23 Application to the Nelson Road location on September 27, 2021.

33. On October 3, 2021, Leah LNU texted Plaintiff and stated. "good morning. Would you wanna come back to mcds part time I asked about 4-10ish.. she wanted me to ask if you can stay til 12; close Friday's and Saturday's for sure.. If you can you'd most likely get the opener close rate of 12$." Leah LNU thereafter indicated that she "got the okay" to hire Plaintiff at $11.50 and asked her to come in and complete the requisite paperwork that afternoon. Moreover, Leah LNU informed Plaintiff that Chalise LNU was the new General Manager but that "me (Leah) liv vee Malaysia tricey all backed for you (Plaintiff)."

34. On October 3, 2021, Plaintiff went to the McDonald's facility and met with Leah LNU. During the meeting, Leah LNU completed paperwork, entitled "Welcome to Our McFamily!" on Plaintiff's behalf. The paperwork directed Plaintiff to complete her new hire packet and to attend orientation starting Monday, October 4, 2021 at 1:30 p.m. The paperwork further indicated that Plaintiff was a re-hire and that her "hire date" was October 3, 2021.

35. At 5:17 p.m. on October 3, 2021, Leah LNU texted Plaintiff and stated, "so they just told me hold off on orientation tomorrow she need to check with someone."

36. When Plaintiff appeared for orientation on October 4, 2021, Leah informed her that Chalise LNU, the General Manager, had been instructed that Plaintiff was ineligible for rehire by her upline. Accordingly, Leah told Plaintiff that she could not actually be rehired at that time.

---

**FIRST CAUSE OF ACTION:**
**SEXUAL DISCRIMINATION IN EMPLOYMENT**
*Pursuant to 42 U.S.C. 2000e et seq.*

---

37. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

7

38. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

39. Defendant is an "employer" subject to the provisions of Title VII. At all relevant times, **ABNAR INC.** was an entity engaged in an industry affecting commerce who, upon good information and belief, has employed more than fifteen employees for at least twenty (20) calendar weeks in both 2019 and 2020. 42 U.S.C. § 2000e(b)

40. Plaintiff is a woman and is therefore a member of a protected class.

41. Plaintiff was qualified for her position as a Crew Trainer and was able to perform all functions of her job.

42. Plaintiff was subjected to pervasive and/or severe harassment by co-worker, Jessie James. Each and every instance of harassment was entirely unwanted and uninvited by Plaintiff.

43. The harassment exhibited by James was based on Plaintiff's sex as a woman. Not only did James constantly refer to Plaintiff as "baby," but he described sexual scenarios and what James "would do to Plaintiff" if they were together. In addition, James repeatedly touched Plaintiff in sexual areas, with said conduct culminating with him grabbing her buttocks. At no time did James exhibit such conduct against any male employee.

44. James' pervasive and/or severe harassment negatively affected a term, condition, and/or privilege of Plaintiff's employment, as the repeated acts of harassment undermined Plaintiff's workplace performance and, as a victim of repeated sexual abuse, to exhibit significant flare-ups of her PTSD, Depression, and Anxiety.

45. Plaintiff attempted to take advantage of any preventive or corrective opportunities available to her. She reported the conduct to various management officials including Shift Leaders, the Kitchen Manager, the Manager, and Human Resources.

46. Defendant altogether refused or otherwise failed to take remedial action or to prevent or correct James' harassive behavior in any way during Plaintiff's employment.

47. Defendant knew or should have known of James' harassment, and it failed to take prompt remedial action.

48. Defendant's conduct was malicious or was otherwise committed with reckless indifference to Plaintiff's federally protected rights.

49. WHEREFORE, Plaintiff prays that Defendant be found liable for violating the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

---

**SECOND CAUSE OF ACTION:**
**RETALIATION**
*Pursuant to 42 U.S.C. § 2000e-3(a)*

---

50. Plaintiff restates and realleges all previous Paragraphs as if fully set forth herein.

51. Plaintiff verbally complained to numerous supervisors following the James grabbing her buttocks in June 2020.

52. Plaintiff's verbal complaints to various supervisors and management officials constitute protected activity for purposes of Title VII.

53. Plaintiff was ultimately terminated from Defendant's company system on July 13, 2020. Accordingly, Plaintiff suffered an adverse employment action.

54. Plaintiff was discharged from her employment within one month of her initial complaint to Shift Lead, LaShonda and Holleman. Moreover, Plaintiff was terminated within less than one (1) week of Plaintiff re-asserting the harassment to Holleman and to asking Joseph to transfer to a different restaurant because she was uncomfortable around James.

55. Because Plaintiff readily indicated her concerns to LaShonda, Holleman, Mackey, and Joseph, all of these decisionmakers had knowledge of Plaintiff's protected activity prior to the decision to discharge her, made effective on July 13, 2020.

56. While Plaintiff was discharged, Defendant readily retained James' employment. It was not until after Plaintiff filed a formal police charge against James that Defendant ultimately terminated James' employment.

57. Defendant's conduct was malicious or was otherwise committed with reckless indifference to Plaintiff's federally protected rights.

58. WHEREFORE, Plaintiff prays that Defendant be found liable for violating the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

59. Following her discharge, Plaintiff filed a Charge of Discrimination on September 20, 2020, which constitutes protected participation activity for purposes of Title VII. Plaintiff's Notice of Suit Rights were issued on July 8, 2021.

60. Per the instruction of Leah LNU on September 17, 2021, and because she wanted to return to work for Defendant at the Nelson Road location, Plaintiff submitted another application to Defendant on October 3, 2021.

61. Although Leah LNU got the "go ahead" to hire Plaintiff at $11.50 per hour, had Plaintiff complete all necessary paperwork, and had indicated thereon that Plaintiff was a re-hire,

Chalise LNU instructed Leah LNU to postpone Plaintiff's October 4, 2021 orientation because "she need to check with someone."

62. After learning that Plaintiff had filed a Charge of Discrimination against Defendant, Defendant, through its supervisory and/or managerial officials, informed or otherwise instructed Chalise LNU that Plaintiff was no longer eligible for rehire. Accordingly, Plaintiff learned that she was not eligible for rehire on October 4, 2021.

63. The failure to hire/re-hire constitutes an adverse employment action for purposes of Title VII.

64. Within less than two days after Plaintiff submitted a formal application for employment, Plaintiff was denied re-hire with Defendant, despite the fact that she had already been "hired" and had completed necessary onboarding paperwork.

65. The individual(s) who redesignated Plaintiff from eligible to non-eligible for re-hire had actual knowledge of Plaintiff's EEOC charge.

66. Upon good information and belief, Defendant, through its agents and or employees, acted willfully or in reckless disregard of Plaintiff's federally protected rights by denying her re-hire in retaliation for her protected activity under Title VII.

67. WHEREFORE, Plaintiff prays that Defendant be found liable for a second violation of the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

*{Remainder of Page Intentionally Left Blank}*

## PRAYER

**WHEREFORE,** Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any other statutory relief, including punitive damages;

(b) Reasonable attorney's fees, with conditional awards in the event of appeal;

(c) Pre-judgment interest at the highest rate permitted by law;

(d) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(e) Costs, including expert fees;

(f) Reasonable and necessary medical care and expenses in the past and future;

(g) Injunctive relief; and

(h) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues if triable.

*{Signature Page to Follow}*

         **Respectfully Submitted,**

         **SUDDUTH & ASSOCIATES, LLC**
         Attorneys-at-Law
         1109 Pithon Street
         Lake Charles, LA 70601
         Tel: (337) 480-0101
         Fax: (337) 419-0507
         Email: james@saa.legal

BY: */s/ James E. Sudduth, III*
    JAMES E. SUDDUTH, III (#35340)
    KOURTNEY L. KECH (#37745)
    PIERCE A. RAPIN (#38579)